

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUE HOLLANDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 0057 |
| vs. ) | |
| ) | Magistrate Judge Schenkier |
| JAMES BROWN and JAMES ) | |
| BROWN ENTERPRISES, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER[1]

Defendants, James Brown ("Brown") and James Brown Enterprises, Inc. ("Brown Enterprises"), have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. # 8). Defendants' motion seeks dismissal of a five-count complaint filed by the plaintiff, Jacque Hollander. Plaintiff asserts claims: (a) against Mr. Brown for false imprisonment (Count I), sexual assault and battery (Count II), and intentional infliction of emotional distress (Count III); (b) against Mr. Brown and Brown Enterprises for negligence (Count IV); and (c) against Brown Enterprises under the doctrine of *respondeat superior* (Count V). For the reasons that follow, defendants' motion to dismiss is granted.

### I.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide its merits *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court accepts all well-pled allegations as true and draws all

---

[1]On March 15, 2005, by consent of all the parties and pursuant to 28 U.S.C. § 636(c), the Executive Committee reassigned the case to this Court for all proceedings, including the entry of final judgment (doc. ## 13-15).

reasonable inferences in the light most favorable to the moving party. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). In order to survive a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Turning to the complaint, the relevant allegations, which we take as true solely for the purposes of this motion, are as follows.

Defendants retained plaintiff to assist with public relations sometime "between the years of 1987 and 1988" (Compl. at ¶ 7). In return for plaintiff's public relations services, defendants agreed to aid plaintiff in her aspiration to become a songwriter as part of her compensation (*Id.*). Sometime in April 1988, plaintiff met with Mr. Brown and Albert Dallas, an attorney representing both defendants, at the corporate offices of Brown Enterprises in Augusta, Georgia (*Id.* at ¶ 10). The purpose of the meeting was for plaintiff to provide paperwork and to discuss her career (*Id.* at ¶ 9). When the meeting ended, Mr. Dallas told plaintiff to accompany Mr. Brown in his vehicle, so that Mr. Brown could show her a car he was having customized (*Id.* at ¶ 11). While plaintiff was placing belongings in her own car, she observed Mr. Brown exit the Brown Enterprises offices carrying what appeared to be a shotgun (*Id.* at ¶ 12). Assuming that the gun was for Mr. Brown's protection, plaintiff entered Mr. Brown's vehicle (*Id.* at ¶ 13).

Mr. Brown drove plaintiff to the car dealership, where she toured the premises while Mr. Brown met with the staff (Compl. at ¶ 13). After leaving the dealership with plaintiff, Mr. Brown allegedly began to drive recklessly, ignoring plaintiff's pleas that he slow down (*Id.* at ¶ 15). Plaintiff claims she observed Mr. Brown foaming at the mouth, speaking incoherently, acting paranoid, and exhibiting spastic facial movements (*Id.*). Mr. Brown allegedly threatened plaintiff to remain silent, and then exited the highway onto a deserted property in South Carolina (*Id.* at ¶¶

15-16). Plaintiff claims that upon stopping the vehicle, Mr. Brown ordered her into the back seat of the van and told her to remove her clothing (*Id.* at ¶ 17). Plaintiff alleges that when she pleaded with Mr. Brown not to make her do this, he responded by grabbing the shotgun and threatening to harm her if she did not comply (*Id.*). Over the next several hours, Mr. Brown allegedly raped, beat, and mentally tortured plaintiff (*Id.* at ¶ 18). Plaintiff alleges that after he later returned her to Brown Enterprises in Augusta, Georgia, Mr. Brown threatened to have plaintiff killed if she told anyone what had happened (*Id.*).

Plaintiff alleges that some 12 years later, on or about December 27, 2000, she was diagnosed with a condition known as Graves' disease (Compl. at ¶ 19), which is "characterized by hypermetabolism and elevated serum levels of free thyroid hormones." *See* THE MERCK MANUAL at 86 (7th ed.). Plaintiff further alleges that sometime in 2003, plaintiff was informed by an unidentified treating physician that the actual and proximate cause of the Graves' disease was the rape and torture allegedly perpetrated by Mr. Brown in 1988 (*Id.* at ¶ 20).[2]

## II.

Defendants move to dismiss the complaint on the ground that all of plaintiff's claims, which were first asserted in the complaint filed on January 5, 2005, are barred by Illinois' two-year statute of limitations applicable to tort claims for personal injury. 735 ILCS 5/13-202. Statutes of limitation are governed by the law of the forum state. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004) ("[a] federal court sitting in diversity must follow the statute of limitations that the state in which it is sitting would use"); *see also Cox v. Kaufman*, 571 N.E.2d 1011, 1015 (1st Dist.

---

[2] In her brief on the motion to dismiss, plaintiff elaborates that she first obtained this information "after January 5, 2003" (Pl.'s Mem. at 6, 19).

1991). Plaintiff concedes this point (Pl.'s Mem. at 7, ¶ 21). This Court, exercising diversity jurisdiction in this case, sits in Illinois and will thus apply the Illinois statute of limitations to all of plaintiff's claims, since they all arise under tort law and allege personal injury.[3]

Section 13-202 states, in relevant part, that "[a]ctions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a statutory penalty, or for abduction, or for seduction, . . . shall be commenced within two 2 years next after the cause of action accrued. . . ." 735 ILCS 5/13-202. Under Illinois law, "a cause of action accrues at the time [a plaintiff's] interest is invaded. . ." *Hyon Waste Mgmt. Servs. v. City of Chicago*, 574 N.E.2d 129, 132 (1st Dist. 1991). This general rule is tempered by an additional requirement, known as the "discovery rule": the plaintiff must "know[] or reasonably should know that he has been injured and that his injury was wrongfully caused" before the statute will begin to run. *Golla v. Gen. Motors Corp.*, 657 N.E.2d 894, 898 (Ill. 1995).

In applying the discovery rule, Illinois courts recognize a difference between the discovery that one has been injured, and the realization of the full extent of the injury. Thus, "the mere fact that the extent of [one's] damages is not immediately ascertainable does not postpone the accrual of a plaintiff's claim." *Hyon*, 574 N.E.2d at 132. Rather, when a person sustains a personal injury as

---

[3]Plaintiff does not argue that a choice of law dispute exists with respect to the statute of limitations question (Pl.'s Mem at 7). However, even if we were to apply the statute of limitations of Georgia (where Brown Enterprises is incorporated (Compl. ¶ 3)), or South Carolina (where Mr. Brown resides and where the alleged attack in 1988 occurred (*Id.* ¶¶ 2, 16)), it would not affect the outcome of this motion. Like Illinois, Georgia has a two-year limitations period for personal injuries (including those caused by negligence), Ga. Code Ann., §§ 9-3-33 (West 2005).

South Carolina, on the other hand, has a three-year statute of limitations for intentional torts that include assault and battery, but not false imprisonment, S.C. Code Ann. § 15-3-530 (West 2005). False imprisonment is governed by a two-year statute of limitations under S.C. Code Ann. § 15-3-550 (West 2005). It is not clear from the defendant's citation what statute governs the limitations period for negligence. But, since the Court finds that Illinois law applies, further inquiry is unnecessary. And, given the length of time between the alleged events in 1988 and the filing of this lawsuit in 2005, whether a two-year or three-year limitations period would apply is immaterial to the outcome of this motion.

4

a result of a sudden, traumatic event, the statute of limitations begins to run at the time of the event. *Golla*, 657 N.E.2d at 899-900. "The rationale supporting this rule is that the nature and circumstances surrounding the traumatic event are such that the injured party is thereby put on notice that actionable conduct might be involved." *Id.* at 899.

Notice, therefore, is a term that embraces a reasonable person standard: if a reasonable person knew or should have known he or she was injured by an act or event, then the statute begins to run from that moment. *Wells v. Travis*, 672 N.E.3d 789, 793 (2d Dist. 1996). The knowledge need not be actual as long as the injured person possesses sufficient information concerning the injury and its cause to induce a reasonable person to make further inquiries. *Swann & Weiskopf, Ltd. v. Meed Assoc., Inc.*, 711 N.E.2d 395, 399 (1st Dist. 1995). "To determine when a plaintiff reasonably should have discovered that an injury was caused by defendant's wrongful conduct, courts look to the nature of the injury itself; the more obvious the injury, the more easily a plaintiff should be able to determine its cause." *Hoffman v. Orthopedic Sys., Inc.*, 765 N.E.2d 116, 121 (1st Dist. 2002).

### III.

Defendants argue that plaintiff's claims are barred by Illinois' two-year statute of limitations, as the complaint discloses that the defendants' conduct occurred in April 1988 and this suit was not filed until January 2005, nearly 17 years later. Plaintiff, for her part, contends that her claims are saved by the discovery rule. Specifically, plaintiff contends that her sole injury from the 1988 events is Graves' disease, and she only discovered the link between the 1988 events and this disease some time after January 5, 2003, when an unidentified treating physician linked them – not in 2000, when she was diagnosed with the disease (Pl.'s Mem. at 3, ¶¶ 5, 7, 11). Alternatively, plaintiff argues that

5

the two-year statute of limitations should be tolled because, as a result of Mr. Brown's alleged threats, she "had a very reasonable belief that she would have suffered considerable harm if she filed an action within the statute of limitations period" (Pl.'s Mem. at 5, ¶¶ 12-13).

Because the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) is only appropriate if the allegations in the complaint show that a cause of action is time-barred. *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003). Thus, the question before us is whether plaintiff's complaint contains allegations showing that her claims for false imprisonment (Count I), sexual assault and battery (Count II), intentional infliction of emotional distress (Count III), negligence (Count IV) and *respondeat superior* (Count V) are barred by the Illinois two-year statute of limitations. For the reasons that follow, we conclude that it does.

### A.

We begin with plaintiff's argument based on the discovery rule. A traumatic event, such as the one alleged by plaintiff here, falls within the "obvious injury" category and, in our view, requires us to count the two-year period beginning from April 1988. The allegations in the complaint reveal that as to each of her claims, plaintiff had notice that her "interest[s] [were] invaded," *Hyon*, 574 N.E.2d at 132, as of April 1998, when she experienced the alleged "sudden, traumatic event[s]." *Golla*, 657 N.E.2d at 899-900. To illustrate this point, we address the elements and allegations of each claim.

Count I asserts a claim of false imprisonment against Mr. Brown. To state a claim for false imprisonment under Illinois law,[4] a plaintiff must establish an unreasonable restraint of liberty,

---

[4] We apply Illinois law with respect to the elements of the plaintiff's false imprisonment, sexual assault and battery, and intentional infliction of emotional distress claims, as the parties do not suggest any other law should be applied in this diversity action. The only choice of law issues raised involve the negligence (Count IV) and *respondeat*

6

against her will, caused by the defendant. *Carey v. K-Way, Inc.*, 728 N.E.2d 743, 746 (1st Dist. 2000). Plaintiff alleges that in April 1998, she was unreasonably restrained against her will at the time when she asked Mr. Brown to allow her to leave the vehicle, and he unlawfully refused to do so (Compl. at ¶ 23-26). Thus, plaintiff's cause of action for false imprisonment accrued in April 1988, because it is at that time that she knew she was restrained against her will.

Count II asserts a claim for sexual assault and battery against Mr. Brown. In Illinois, a sexual assault consists of an act of sexual penetration by the use or threat of force or violence. *People v. Casiano*, 571 N.E.2d 742, 748 (1st Dist. 1991). The plaintiff alleges that she was the victim of penetration achieved by force by alleging that she was threatened with a shotgun, ordered to take off her clothes, and forced to engage in sexual intercourse and other sex acts (Compl. at ¶¶ 17-18, 30-31). These allegations are sufficient to establish that plaintiff had notice of her alleged sexual assault claim in April 1988, and that her sexual assault claim thus accrued in April 1988.

The plaintiff's allegations of battery in Count II also show that she had notice of that claim in April 1988. Under Illinois law, the elements of battery include an intentional act by the defendant which results in an "offensive contact with the plaintiff's person." *McNeil v. Carter*, 742 N.E.2d 1277, 1281 (3d Dist. 2001). Plaintiff alleges that offensive contact by Mr. Brown to her person in 1988, when Mr. Brown allegedly struck her, pulled her hair, slammed her against his van (Compl. at ¶ 30) – and, indeed, allegedly raped her (*Id.* at ¶ 18). These allegations plainly establish that plaintiff had notice of her battery claim in April 1988, and that it accrued as of that date.

Count III asserts a claim for intentional infliction of emotional distress ("IIED") against Mr. Brown. In Illinois, to state a claim for IIED, a plaintiff must allege that the defendant's conduct was

---

*superior* (Count V) claims, which we address at page 9, *infra*.

extreme and outrageous, that the defendant intended to cause or knew that the conduct was highly likely to cause extreme emotional distress, and that the defendant's conduct did in fact cause such distress. *Thomas v. Fuerst*, 803 N.E.2d 619, 625 (1st Dist. 2004). The conduct plaintiff ascribes to Mr. Brown – namely, trapping her in a speeding van, threatening to kill her, physically and sexually assaulting her, and forcibly raping her (Pl.'s Compl. ¶¶ 23-25, 30) – comfortably falls within any reasonable definition of "extreme and outrageous." Plaintiff further alleges that Mr. Brown knew or should have known that his alleged conduct would cause plaintiff "significant trauma," and that the alleged conduct in fact caused her "significant psychological and physiological trauma" (Compl. at ¶¶ 34-35). Based on these allegations, any reasonable person would have had notice of the wrongful invasion of interests in April 1988, and thus the IIED cause of action accrued as of that date.

Count IV asserts negligence claims against both defendants. To state a claim for negligence under Illinois law, a plaintiff must allege the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury caused by that breach. *Thompson v. County of Cook*, 609 N.E.2d 290, 293 (Ill. 1993). Here, plaintiff allege that when she was a passenger in Mr. Brown's vehicle in April 1988, Mr. Brown owed her a duty "to not partake in a substance that would so impair his ability that it would place [p]laintiff in jeopardy" (Compl. at ¶ 39). She further alleges that Mr. Brown breached that duty by allegedly taking some such substance (*Id.* at ¶ 38). Thus, plaintiff alleges facts that show she had notice of this claim more than 16 years ago, and so her negligence claim against Mr. Brown therefore accrued as of April 1988.

As for Brown Enterprises, plaintiff alleges that it had a duty to her to "mitigate the situation" by preventing Mr. Brown from taking plaintiff in his vehicle, or "to warn [p]laintiff of the risks" of

8

Mr. Brown's alleged behavior and drug usage (Compl. at ¶ 42). Again, plaintiff alleges that Brown Enterprises owed her a duty in April 1988, when she was a passenger in Mr. Brown's vehicle. Plaintiff was on notice in April 1988 that Brown Enterprises had breached this alleged duty, and thus her claim against Brown Enterprises accrued at that time.

Finally, in Count V, plaintiff seeks to hold Brown Enterprises liable under the common law theory of *respondeat superior*, premised upon the negligence of Mr. Brown. A claim under the theory of *respondeat superior* is subject to the statue of limitations applicable to the underlying theory of liability against the employee, here negligence, which is two years. *See Medina v. Taylor*, 542 N.E.2d 33, 34-35 (1st dist. 1989). Because the negligence claim does not survive the two-year statute of limitations, the *respondeat superior* claim cannot survive either, since there is no negligent act by the employee, Mr. Brown, upon which to base the claim.[5]

We have considered plaintiff's attempt to invoke the discovery rule to defer the start of the statute of limitations until some time after January 5, 2003, when she allegedly was first told that the Graves' disease (which first surfaced in 2000) was caused by her alleged encounter with Mr. Brown in April 1988. Plaintiff claims that prior to January 2003, no reasonable person, in her shoes, would have known that the Graves' disease was linked to the alleged 1988 events, because no injury prior

---

[5] A choice of law issue has been raised with respect to the negligence and *respondeat superior* claims. A federal court exercising diversity jurisdiction applies the choice of law rules of the state in which it sits – here, Illinois. In Illinois, the threshold determination in a choice of law dispute is whether a "true conflict" exists. *Schoeberle v. U.S.*, Nos. 99 C 0352, 99 C 2599, 99 C 2292, 2000 WL 1868130, at 6* (N.D. Ill., Dec. 18, 2000). A true conflict does not exist unless "there is an actual conflict in the substantive law such that the case would have a different outcome depending on which law is applied." *Id.* For purposes of the negligence claim in Count IV, the laws of Georgia and South Carolina both have the same substantive elements as Illinois. *See, e.g., Bajwa v. Metro Life Ins. Co.*, 804 N.E.2d 519, 526 (Ill. 2004) ("To recover in a negligence action, a plaintiff must allege facts from which a court will find a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach"); *compare Johnson v. Am. Nat. Red Cross*, 578 S.E.2d 106, 108 (Ga. 2003) (elements of negligence are: duty, breach of duty, causation, and damages); *Whaley v. CSX Transp., Inc.*, 609 S.E.2d 286, 298 (S.C. 2005) (common law elements of negligence are duty, breach, causation and damages). There being no true conflict, no choice of law issue is present. And, without a negligence claim, there can be no *respondeat superior* claim.

to that time would have provided that awareness (Pl.'s Mem. at 4, ¶ 11). Notwithstanding plaintiff's attempt at artful pleading, we reject plaintiff's discovery rule argument based on a straight-forward application of the well-settled principle under Illinois law that what triggers the onset of the statute of limitations is the alleged invasion of plaintiff's legally cognizable interest in 1988. Illinois law is unequivocal in that "the mere fact that the extent of . . . damages is not immediately ascertainable does not postpone the accrual of a plaintiff's claim." *Hyon*, 574 N.E.2d at 132. Thus, the fact that certain effects of that alleged invasion may not have been linked to that invasion of interest for some 15 years does not provide us with a sound basis for application of the discovery rule.

Rather, a finding that plaintiff's claims are barred here is consistent with the philosophy underlying the discovery rule. Statutes of limitations exist to prevent the bringing of stale claims.

> Statues of limitation . . . promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.

*Order of Telegraphers v. R.R. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944); *see also Hyon*, 574 N.E.2d at 132. Liberal application of the discovery rule exception to a case like this would undermine the limitations period and create uncertainty and doubt in the place of predictability and finality. *Sepmeyer v. Holman*, 642 N.E.2d 1242, 1245 (Ill. 1994). Unlike certain toxic tort cases, plaintiff's alleged injury here was not inherently unknowable at the time of injury. *Urie v. Thompson*, 337 U.S. 163, 169 (1949). *See also Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864, 867 (Ill. 1981); *Hill v. Pedapti*, 759 N.E.2d 1015, 1018 (2d Dist. 2001). Rather, plaintiff simply did

not know the full extent of her alleged injuries until after the statute expired. That is precisely the type of case to which the discovery rule does not apply.

### B.

Alternatively, plaintiff argues that the commencement of the limitations period should be tolled, because that she feared retaliation from Mr. Brown based on his threat to have her killed if she told anyone of the alleged 1988 attack (Pl.'s Mem at 5, ¶¶ 12-13). The Court is not persuaded that this allegation serves as a basis for tolling the statute of limitations. Plaintiff concedes that there is no precedent establishing tolling on this basis, and this Court will not create precedent for such an argument. To toll the statute on such a basis for any amount of time, let alone for nearly 17 years, would seriously undermine the purpose of the statute and open the classic "Pandora's Box" of stale claims. Virtually any claimant who missed the limitations period could allege a threat of retaliation to defeat the statute. We find no basis for that result in Illinois law.

### CONCLUSION

For the reasons given above, defendants' motion to dismiss (doc. # 8) is granted. This case is terminated, and a final judgment should be entered by the Clerk of the Court pursuant to Fed.R.Civ.P. 54.[6]

ENTER:

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: June 28, 2005**

---

[6] The defendant also argues that the Court should strike paragraphs 17, 18 and 19 of plaintiff's response, since it seeks to correct pleading errors in the complaint (Defs.' Reply Mem. at 4). The Court need not decide this issue given the rulings above.